# IN THE COURT OF APPEALS OF IOWA

No. 23-1320
Filed December 6, 2023

**IN THE INTEREST OF E.H., E.H., and N.H.,**
**Minor Children,**

**K.H.-Z., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Brent Pattison, District

Associate Judge.


        A father appeals the termination of his parental rights to three children.

**AFFIRMED.**


        Daniel M. Northfield, Urbandale, for appellant father.

        Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

        Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and

guardian ad litem for minor children.


        Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**TABOR, Presiding Judge.**

A father, Kevin, appeals the termination of his parental rights to three daughters—El.H. born in 2015, N.H. born in 2019, and Ev.H. born in 2021.[1] He disputes the statutory grounds for termination and contends termination is not in the girls' best interests. Deferring to the juvenile court's finding that Kevin was not credible when testifying about his progress, we affirm the termination order.

## I.     Facts and Prior Proceedings

This family came to the attention of the Iowa Department of Health and Human Services in November 2021 when the girls' mother suffered a mental-health crisis. In her words, she "had a huge case of catatonic schizophrenia." The mother's medication caused her to sleep for long stretches of time. She also experienced hallucinations. Then-six-year-old El.H. was left to supervise her toddler and infant sisters. On top of the neglect, the record shows that the mother stabbed El.H. with a knife and strangled her. The department developed a safety plan that required Kevin to ensure that the mother was not left alone with the children. When the parents did not comply, the court approved the department's request to remove the children in December 2021.

The turmoil at home took a toll on the children, especially the two older girls. For example, the eldest sister, El.H., was diagnosed with unspecified trauma and stressor-related disorder. A therapist reported that El.H. had flashbacks, trouble sleeping, and difficulty remembering certain experiences. Middle sister, N.H., met

---

[1] The juvenile court also terminated the rights of their mother. She does not appeal.

the criteria for adjustment disorder and had "nightmares, difficulty concentrating, and excessive worry."

During 2022, the mother continued to experience serious mental illness. Meanwhile, Kevin struggled to appreciate the trauma-induced needs of the children and found it difficult to address them on his own. Kevin also faced his own mental-health challenges; an evaluator recommended he receive therapy for anxiety and depression. He followed that recommendation.

The children were first placed with their maternal grandmother. But when the department discovered substance abuse in that home, the girls went to live with their aunt. Kevin pressured the aunt to allow both himself and the mother to have unsupervised visits with the children at her home. But the aunt set boundaries, and the children felt safe in her care. The youngest girl, Ev.H., was "very attached" to the aunt, according to the social workers.

On Mother's Day 2022, the parents got into an argument and the mother assaulted Kevin. She pleaded guilty to assault causing injury. After the no-contact order was dropped, Kevin continued to "hang out" with the mother.

After a November 2022 permanency hearing, the court noted: "Kevin did a good job in his testimony of accepting some responsibility for what happened. This is consistent with his therapist reports too. Ultimately, the Court finds it is not time to give up on reunification yet. A six-month extension is the best permanency option at this time."

After six months, in April 2023, the State petitioned to terminate parental rights. Kevin had just started having visits with the children without the mother there. It was daunting for him to supervise all three children at once. Still, he

asked to increase his time with them and to have less supervision. But the guardian ad litem (GAL) resisted because the children were uncomfortable having visits alone with their father. The court left the specifics of visitation in the department's discretion.

The court held a termination hearing in May and June 2023. Both parents testified, as did the department social worker. Kevin told the court that he was ready to resume custody of the girls. He had been working as a delivery driver for about one year. He was also renting a house where the girls could have their own rooms. He testified that he understood "my kids need to be safe, our home needs to be peaceful." While he wanted to help the mother, Kevin said: "The one thing that I see now, the more I help her, the longer our family stays separated." Kevin also submitted letters of support from friends and family members. But none of them acknowledged the big challenges to his safe parenting.

The juvenile court no longer found Kevin's testimony believable:

Kevin's testimony was very similar to his testimony at other stages in the case. He always does a nice job talking about the efforts he is making and the things he has learned. At every stage in this case, Kevin has been able to say clearly the things he knows professionals want to hear. He told [the department] he would follow the terms of the safety plan they set up to keep the children in the home prior to removal. But he did not follow through. He said he and [the mother] were going to parent separately at the permanency hearing, but then he cancelled the no contact order and they were living together again. His statements accepting some responsibility for the removal in the permanency hearing were a big reason the court granted an extension, but just a few months later, Kevin minimized his role in the removal when he met with his new therapist in March of 2023. These differences between what Kevin will say in court, versus what he says and does outside of the court, lead the court to find his testimony about his progress less credible.

The social worker testified that she was not convinced that Kevin could set "safe boundaries" with the mother. And even if he could, she doubted whether he could recognize the trauma the girls experienced or deal with their mental-health needs. At the close of the termination hearing, the GAL told the court that the two older girls expressed a desire to remain in their aunt's home, where they feel safe.

The court terminated Kevin's rights under Iowa Code section 232.116(1) (2023), paragraph (f)[2] for El.H. and paragraph (h)[3] for N.H. and Ev.H. And because of the lingering safety concerns tied to reunification, the court found

---

[2] To terminate under paragraph (f) the court must find these elements:
> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[3] To terminate under paragraph (h), the court must find these elements:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

that termination was in the girls' best interests. *See* Iowa Code § 232.116(2). Kevin appeals.

## II. Scope and Standard of Review

We review termination proceedings de novo. *In re A.S.*, 743 N.W.2d 865, 867 (Iowa Ct. App. 2007). The State must prove the grounds for termination by clear and convincing evidence. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We respect the juvenile court's factual findings, but we are not bound by them. *Id.* When the court makes a "specific and strong adverse credibility finding," as it did here, we may defer to that determination. *See A.S.*, 743 N.W.2d at 868.

In evaluating termination appeals, we generally follow a three-step process. First, we decide whether the State proved any grounds for termination under Iowa Code section 232.116(1). *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Second, we must evaluate whether termination is in the children's best interests under section 232.116(2). *Id.* Third, we consider whether any circumstances listed in section 232.116(3) preclude termination. *Id.* at 220. When a parent does not challenge one of these steps, we need not address it. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Here we address only steps one and two, because Kevin does not raise a meaningful claim on step three.[4]

---

[4] The petition on appeal includes this comment: "Termination not necessary. See 232.116(3)(a), as a relative had custody of the children at the time of termination." Because counsel did not develop any argument beyond that passing reference to the applicable code section, he waives any would-be claim. *See In re A.H.*, No. 23-1412, 2023 WL 7015742, at *1 n.1 (Iowa Ct. App. Oct. 25, 2023).

### III.    Analysis

*Statutory Grounds.*  Kevin contests the last element of paragraphs (f) and (h).[5]  He argues the State did not offer clear and convincing evidence that the children could not be returned to his custody at the present time.  *See In re S.O.*, 967 N.W.2d 198, 207 (Iowa Ct. App. 2021) (defining present time as "the time of the termination hearing").  In support of his position, he asserts that he had a job and "a place for his children to stay."  He also says that he has family and friends to "help out" when he is at work.  He disputes the juvenile court's finding that he had continuing contact with the mother.  He insists that they had been living separately for three months by the time of the termination hearing.  He also quotes from his therapy records to show that he understands his oldest daughter's trauma.  But the mother's testimony contradicted his version.  She said they only separated to convince the court they could parent apart and planned to reconcile if the children were returned to them.  And while her mental health had stabilized since the removal, the mother testified that she was not attending therapy and stopped taking her medication because she lost her insurance.

The girls could not be safely returned to Kevin's custody at the time of the termination hearing.  *See In re D.W.*, 791 N.W.2d 703, 707–08 (Iowa 2010) (finding grounds for termination existed when record did not provide evidence that the child could be returned safely home and emphasizing that courts must give primary consideration to "the child's safety" when assessing termination factors).  The

---

[5] Although the wording differs slightly, the final elements of paragraphs (f) and (h) are functionally equivalent.  *See, e.g.*, *In re D.I.*, No. 22-1771, 2022 WL 17829107, at *1 (Iowa Ct. App. Dec. 21, 2022).

social worker and GAL could not recommend reunification, despite Kevin's participation in therapy and his claim that he now understood the trauma the girls suffered when he left them alone with their mother when she was in the throes of a mental-health crisis. Like the juvenile court, we believe the proof is clear that Kevin continued to have contact with the mother and did not fully appreciate the risk that posed to their daughters. *See A.S.*, 743 N.W.2d at 868. We find clear and convincing evidence for termination under paragraphs (f) and (h).

*Best Interests.* Kevin next contests the juvenile court's finding that termination was in the children's best interests. When determining best interests, we give primary attention to the children's safety; to the best placement for furthering their long-term nurturing and growth; and to their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2). We also weigh the reasonable preferences of children who have the capacity to express their wishes. *Id.* § 232.116(2)(b)(2).

Kevin's petition on appeal does not step through this statutory framework. Instead, he points to a therapy assessment noting that he loves his daughters and they return those feelings. He also highlights the therapist's recommendation that he have an ongoing relationship with the children even if his rights are terminated.

We don't discount Kevin's love for his daughters. But we share the juvenile court's concern that they would not be safe if returned to his care. As the juvenile court noted, the older girls have "lost trust in [their] father to be protective." The best placement for their long-term nurturing and growth is with their aunt, who has provided care for over one year and is willing to adopt. They feel safe in her home and expressed a desire to stay there. Their therapist also stressed that the girls

need a long-term option for a safe and nurturing home. Termination will enable them to achieve that permanency. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Like the juvenile court, we find termination is in the children's best interests.

**AFFIRMED.**